July 14, 2026

**Supreme Court**

No. 2025-132-Appeal.
(KC 24-1004)

Vanessa Carlton et al.          :

v.          :

Artak Avagyan et al.          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Vanessa Carlton et al.              :

v.                          :

Artak Avagyan et al.              :

Present: Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The defendants, Artak Avagyan and Lee Beausoleil, appeal from an order of the Superior Court granting a preliminary injunction in favor of the plaintiffs, Vanessa Carlton and John McCauley.  Before this Court, the defendants contend that the hearing justice erred in granting that injunction.

This case came before the Supreme Court, sitting at North Smithfield High School, for oral argument on April 2, 2026, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.

- 1 -

For the reasons set forth in this opinion, we affirm the order of the Superior Court.

# I

## Facts and Travel

This case stems from a dispute between the owners of neighboring properties. The plaintiffs own and reside in a home located at 141 Post Road, Warwick, Rhode Island, which is in the Pawtuxet Village Historic District. The plaintiffs purchased their property in March of 2021 and have resided there since the Fall of that year. The defendants are the owners of an adjacent property located at 175 Post Road in Warwick. Significantly, the 141 Post Road property is in a "residential" zone, whereas the 175 Post Road property is in a "light industrial" zone.

On October 17, 2024, plaintiffs filed a verified complaint in the Superior Court, seeking monetary damages and injunctive relief because of an alleged private nuisance arising from what plaintiffs considered to be "unreasonable" noises emanating from defendants' property. On the same day, plaintiffs filed an emergency *ex parte* motion for a temporary restraining order and a preliminary injunction.[1] On November 4, 7, and 14, 2024, a hearing was held in the Superior Court on the motion

---

[1] On October 21, 2024, the hearing justice granted plaintiffs' *ex parte* motion for a temporary restraining order. That order is not at issue in the instant case.

for a preliminary injunction. As we discuss in some detail *infra*, the hearing justice granted a preliminary injunction at the conclusion of the hearing.

We summarize below the pertinent testimony of the witnesses at the preliminary injunction hearing whose testimony we deem relevant to the issues before us on appeal.

**A**

**The Testimony of Vanessa Carlton**

Vanessa Carlton, one of the plaintiffs, was the first witness to testify at the hearing. Ms. Carlton stated that she and her husband are "both musicians," and that she believed that they had found a "forever spot" in their Pawtuxet Village home. She testified that, when she and her family moved into the 141 Post Road property, they encountered no disruptive noises other than the noise emanating from moderate vehicle traffic on Post Road and intermittent airplane noise. Ms. Carlton stated that the noise issue which precipitated this civil action began in July of 2024, when she began hearing persistent construction-related noises coming from defendants' property.

It was Ms. Carlton's testimony that she was aware that "a crane company"[2] had moved into the 175 Post Road property in January of 2024. Ms. Carlton testified

---

[2]     The record reflects that North American Crane & Rigging, LLC is the "crane company" that is a tenant at the 175 Post Road property.

that, after conducting some internet research, she concluded that JOGO Corporation[3] was the source of the instant noise. She stated that it was "heavy machinery" and "an open air fabrication facility" that caused noise which she described as consisting of the "[b]eeping of multiple vehicles, hammering, like a generator, sort of a combination of those things." It was Ms. Carlton's testimony that the result was "like the construction facility took over our property." She further stated:

> "I could not be on the property when the work was going on because I tried for about a week and then I just couldn't be outside or be inside with the windows closed, so I was frantically trying to figure out what happened and who, what the project was, and who was creating the noise * * *."

Ms. Carlton testified that, in attempting to deal with the noise issue on her own, she took steps like planting arborvitaes and having a privacy fence installed between her property line and "the fabrication field"—all to no avail.

Ms. Carlton stated that "[t]he JOGO folks wrapped up their project" and the fabrication noise ended in "the beginning of October [2024]." However, she went on to state that subsequently "a totally different type of crane" moved in and created "a totally different noise * * *." She recalled that this new and "totally different" noise began on October 17, 2024. She stated that, "around that time," she and her

---

[3] The record indicates that JOGO Corporation is a multi-family housing construction company. JOGO was a customer of North American Crane & Rigging, LLC, and it maintained a presence on the 175 Post Road site from July until October of 2024. *See* Part I.I., *infra*.

husband (John McCauley) filed the instant complaint, and a temporary restraining order was granted with respect to the noise at issue. She further testified, however, that, in spite of that judicial relief, she continued to hear noise emanating from the 175 Post Road property; she added that the occupants of the property worked from "nine to five every weekday" and on weekends.

It was also Ms. Carlton's testimony that the sound was "absolutely maddening" and that she and her husband contacted the Warwick Police Department on multiple occasions because she "felt that [the sound] was violating a noise ordinance." Ms. Carlton stated that the police came to her property "maybe five times;" she added that "the police did say that they were going to issue [a violation]."

Ms. Carlton recalled that she and her husband made recordings that captured the noise from both the inside of their house and from outside in their backyard in July, August, and September of 2024. At the hearing on the motion for a preliminary injunction, plaintiffs presented the court with a collection of recordings, which were admitted as full exhibits. Those recordings revealed the presence of noises "presumably coming from JOGO, the prior tenant," including hammering, beeping of vehicles, noises from the cranes, sawing, and a generator sound.

It was Ms. Carlton's testimony that the noise was very "anxiety inducing." She stated that, when the occupants of 175 Post Road were working, her home was "no longer a residential property." She said that, when defendants were using their

property as they had used it prior to July of 2024, she was able to make and arrange music and enjoy her property. She added that her family's "whole life is in that property;" she stated that it had become "extremely challenging to create music there now."

In addition, Ms. Carlton testified that she had, on multiple occasions, seen Mr. Avagyan "walking [her] property line and looking inside of [her] backyard." Ms. Carlton further testified relative to an incident involving a landscaper on defendants' property. Ms. Carlton stated:

> "[T]hey started using landscapers for the first time this summer, and one of the landscapers, he was in the back, and my daughter and I were in the back playing, he was holding a chain saw that he was having trouble getting it to work, so he was just standing there and put it down and he just took out his phone and appeared to be just pointing it at [my daughter]."

On cross-examination, Ms. Carlton testified that on one occasion she had seen Mr. Avagyan "holding a phone up" as though he was filming her house.

**B**

**The Testimony of John McCauley**

John McCauley was the second witness to testify. He testified that he makes his living "mostly traveling, touring as a musician;" he added that, as a result, his "time at home with [his] family is very sacred * * *." He stated that he likes to enjoy his yard and that he also enjoys "having a recording studio on the premises, * * *

- 6 -

having a creative space to work and practice." He testified that he writes, rehearses, and records music in the recording studio in his home.

Mr. McCauley further testified that, even though he had been "touring most of the time while this activity had been going on," the noise issue upon returning home made his "time at home really unenjoyable and completely depressing." He also stated that "[t]here was never a noise problem, nothing out of the ordinary before JOGO started working there." When asked to describe the noise issue that began in July of 2024, Mr. McCauley testified as follows:

> "Prior to July, they had a couple trucks parked there that were no bother to me. Once all the construction equipment came in and then we had eight or more hours a day of hammering, sawing, and beeping, that became pretty intolerable."

Mr. McCauley also testified that his hearing loss and tinnitus were aggravated by the noise emanating from 175 Post Road.

Mr. McCauley testified that commencing the instant civil action "seemed like the only avenue left after * * * the police department couldn't really do much for us anymore." He further commented: "We needed relief from this, it's just been hell." On cross-examination, he acknowledged that JOGO Corporation was no longer active at 175 Post Road, but he added that "the noise * * * since JOGO left the site had been more, very loud engine noises * * *."

## C

### The Testimony of Matthew Jerzyk

Matthew Jerzyk was the next witness to testify. He testified that he lives in the Pawtuxet Village area and that his property "abuts 175 Post Road," although the two properties are separated by the Pawtuxet River. When asked whether he was able to "hear what's going on at 175 Post Road" from his property, Mr. Jerzyk stated: "[F]or me and my family, because our deck looks right out on to this property, this is a pretty awful intrusion." He testified that, prior to JOGO's arrival at 175 Post Road there had been some "occasional noise," but he contrasted that with "the constant * * * construction noise that happened when JOGO started." He added that, in "the very recent weeks," just before the hearing in November of 2024, there had been constant noise emanating from the 175 Post Road property.

## D

### The Testimony of Cody Silva

Cody Silva, plaintiffs' landscaper, next testified. Mr. Silva stated that, on September 14, he and his father were working at the 141 Post Road property. He further stated:

> "[M]e and my father were working in the backyard [of plaintiffs' property] doing some trimming of dead lim[b]s on the trees and I noticed a man who I now know to be Artak walking the back property and he seemed to be recording us working at the time * * *."

It was Mr. Silva's further testimony that, when he noticed this, he "took a quick video to show [Ms. Carlton] the gentleman that was recording to see if she knew him * * *." Mr. Silva stated that he had contacted Ms. Carlton about the incident because he "thought it was kind of a little interesting that somebody was recording us."

**E**

**The Testimony of Sergeant Vincent Sollitto**

Sergeant Vincent Sollitto, a Detective Sergeant assigned to the license bureau of the Providence Police Department, also testified. He stated that, on July 24, 2024, Captain Charles Boisseau of the Warwick Police Department requested that he come to plaintiffs' property to conduct sound readings since the Warwick Police Department did not possess its own "sound meter."[4] Sergeant Sollitto recalled that on July 24 he took decibel readings with a sound meter from 10:30 a.m. until 10:46 a.m. He stated that he conducted the sound readings from the "left rear corner area" of plaintiffs' property. He further stated: "When I was taking the reading I heard a banging type noise and also what * * * appeared to be a back up beeper from some type of heavy equipment." Sergeant Sollitto testified that he took five readings and that two of those readings "contained * * * the banging noise and the back up

---

[4] Sergeant Sollitto explained that a sound meter is a device used to measure the decibel level of particular sounds. He added that the sound meter is calibrated before and after each measurement.

beeping noise * * *." He added that both of those readings were "ten decibels over the neighborhood residual" level.[5] (He explained that "the neighborhood residual" level is the "normal neighborhood decibel level" without "some type of other extraneous sound.")

Sergeant Sollitto's report about his sound readings was entered as a full exhibit at the hearing. The Sergeant also recalled that, after he completed his report, he gave a copy to Captain Boisseau.

## F

## The Testimony of Patrolman James Wenneman

Patrolman James Wenneman of the Warwick Police Department was the next witness to testify. He stated that Captain Boisseau had shown him the noise measurement report and instructed him "to respond over to 175 Post Road and issue [JOGO] a violation." He added that, on August 8, 2024, he went to that property and spoke to one Anderson DiPreto, who told him that the owner of JOGO Corporation was one Kenneth Joensson. Officer Wenneman added: "After I wrote the ticket I gave it to Anderson and instructed [him] to give it to Mr. Joensson."

---

[5]     According to Sgt. Sollitto, those readings were "60.4 for the decibel level for the banging noise and 68 decibel level for the backup beeper." As we discuss *infra*, the hearing justice's eventual preliminary injunction prohibited the creation of sounds in excess of 60 decibels.

## G

### The Testimony of Captain Charles Boisseau

Captain Charles Boisseau of the Warwick Police Department testified next. He recalled that, on or about July 16, 2024, he had responded to plaintiffs' home at 141 Post Road in connection with a complaint about noise emanating from a business located at 175 Post Road. He stated that, when he was at 141 Post Road, he heard backup alarms, hammering, and construction-type noises; he added that he was "very aware" that the noise was coming from 175 Post Road.

Following the testimony of Captain Boisseau, plaintiffs rested.

## H

### The Testimony of Artak Avagyan

The defense first called Artak Avagyan, one of the two owners of 175 Post Road, to testify at the hearing. Mr. Avagyan acknowledged that at some point he had leased a portion of the property to an entity that he referred to as North American Crane & Rigging. He testified that he was not aware that North American Crane & Rigging had allowed JOGO Corporation to occupy the property. Mr. Avagyan stated: "I didn't know who Jogo [*sic*] was. I didn't know it was their stuff. I thought it was just North American Crane."

# I

## The Testimony of Kenneth Joensson

Mr. Kenneth Joensson, the president of JOGO Corporation, was the next and last witness to testify. He testified that JOGO Corporation is a customer of North American Crane & Rigging. Mr. Joensson stated that JOGO had ceased operations at the 175 Post Road property on October 18, 2024 and that, as of the time of the preliminary injunction hearing, JOGO was no longer present at the 175 Post Road property. He also acknowledged that he had been issued a noise violation.

Following the testimony of Mr. Joensson, the defense rested.

## J

## The Hearing Justice's Decision and the Subsequent Travel of the Case

After all the witnesses had testified, the parties submitted written closing arguments. Subsequently, on November 14, 2024, the hearing justice issued a bench decision.

After reviewing the relevant legal standards regarding injunctive relief and after summarizing the testimony of the above-referenced witnesses, the hearing justice ruled that plaintiffs had "established a reasonable likelihood of success on the merits of a complaint for a private nuisance." He further stated:

> "The totality of the evidence offered by the seven witnesses presented by [plaintiffs] credibly establishes that from July through October of 2024, there were frequent periods of long continuous and unreasonably loud

noises, some exceeding personal limits set by the City ordinance generated by tenants on defendants' property. There are also occasions during this time period during which the Defendant Avagyan walked along the boundary line of [plaintiffs'] property holding a cell phone in a manner indicating that he was recording the [plaintiffs] on their property.

"The continuous loud and unnatural noise generated on the [defendants'] property and intrusive conduct related to watching and videotaping [plaintiffs] who are parents of a nine year old child can be construed as material interference with the ordinary physical comfort and reasonable use of [plaintiffs'] property.

"This [c]ourt also finds that irreparable harm could result without a Court Order of Injunctive Relief. The testimony of Ms. Carlton and [Mr.] McCauley clearly establishes that their emotional health and well-being have been adversely [a]ffected. They describe their feelings as 'maddening,' 'depressing,' and 'hell' in explaining their state of mind in dealing with their situation. In addition Mr. McCauley has a health condition, tinnitus, which is exacerbated by prolonged periods of loud noise.

"This [c]ourt is satisfied irreparable harm results without injunctive relief and this [c]ourt also finds that balance of the equities favors the [plaintiffs] and serves the public interest."

With respect to Mr. Avagyan, the hearing justice found that he had "made it clear that he has no desire or interest to discuss this neighborhood dispute in any manner including during this hearing." The hearing justice stated that "[i]njunctive relief is the only option available at this time to maintain peace, quiet, and controlled behavior, all of which serves the public interest."

- 13 -

Finally, the hearing justice concluded that "injunctive relief is both the best and only option to ensure the status quo." He then proceeded to grant plaintiffs' request for a preliminary injunction limited to the owners of the 175 Post Road Property (Mr. Avagyan and Mr. Beausoleil) and North American Crane & Rigging, LLC.

An order reflecting the hearing justice's decision was entered on November 22, 2024.[6] That order stated in pertinent part:

> "Defendants shall not harass, film, photograph, or in any way interfere with Plaintiffs' and/or their minor child's enjoyment of their own property.
>
> "Defendants shall conduct no operation or activity at 175 Post Road in Warwick that violates the City of Warwick's noise ordinance, which is conveyed as noises above sixty (60) decibels.
>
> "Defendants shall cease and desist all operations wherein noise levels unreasonably interfere with Plaintiffs' and/or their minor child's enjoyment of their property."

There was no objection to the language contained in the November 22, 2024 order. On December 11, 2024, an amended order was entered; and, once again, there was no objection to the language contained in that order.

---

[6] The order granting the injunction had originally named JOGO Corporation as one of the defendants. However, an amended order was entered on December 11, 2024, substituting North American Crane & Rigging, LLC as a named defendant in view of the hearing justice's understanding that JOGO Corporation had "left the property * * *."

- 14 -

In due course, Mr. Avagyan and Mr. Beausoleil filed a timely notice of appeal.

## II

## Issues on Appeal

Before this Court, defendants argue that the hearing justice erred in granting the preliminary injunction, contending that he (1) erred in finding a likelihood of success; (2) erred in finding that there was irreparable harm; (3) "failed to undertake any balance of the equities among the parties;" and (4) erred in granting a preliminary injunction which "lacks the specificity required in Rule 65 and this Court's caselaw."[7]

For their part, plaintiffs contend (1) that the hearing justice did not abuse his discretion in granting the preliminary injunction; and (2) that "[t]he hearing justice's order specifically prevents the nuisance at issue in this case."

## III

## Standard of Review

Our review of the grant of a preliminary injunction is "limited to determining whether the hearing justice considered and resolved each of the appropriate

---

[7]     The defendants also contend that the hearing justice erred because he "failed to consider the requirement of security." This argument was not raised below; and therefore we shall not address it. *See DeMarco v. Travelers Insurance Company*, 26 A.3d 585, 628 (R.I. 2011) ("This Court has repeatedly indicated that it adheres to what is commonly called the 'raise or waive' rule—*i.e.*, we do not consider issues on appeal which were not raised and properly presented during proceedings in the court below.").

preliminary injunction factors without abusing his or her discretion." *Vasquez v. Sportsman's Inn, Inc.*, 57 A.3d 313, 318 (R.I. 2012). The factors to be considered are whether the moving party:

> "(1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 705 (R.I. 1999); *see also Finnimore & Fisher Inc. v. Town of New Shoreham*, 291 A.3d 977, 983 (R.I. 2023).

**IV**

**Analysis**

**A**

**Likelihood of Success on the Merits**

The defendants contend that the hearing justice erred in finding that there was a likelihood of success on the merits of plaintiffs' case. It is defendants' view that the hearing justice (1) "erred in failing to take judicial notice of applicable federal regulations requiring vehicles to have a reverse signal alarm;"[8] and (2) "failed to

---

[8] We note that, in their written closing argument submitted after the preliminary injunction hearing had concluded, defendants presented to the hearing justice their contention that federal preemption precludes the enforcement of the City of Warwick's noise ordinance relative to the construction vehicle reverse signal alarms. The plaintiffs objected to defendants' memorandum, stating that it was "well-outside the parameters of a closing argument" because there had been "no testimony"

- 16 -

consider that the Plaintiffs had intentionally moved into an industrial zone on a busy highway in the flight of a busy international airport."  We will address both arguments in turn.

Citing 29 C.F.R. § 1926.601, defendants contend that regulations of the Occupational Safety and Health Administration (OSHA) which require that motor vehicles have a "reverse signal alarm audible above the surrounding noise level,"[9] preempt the City of Warwick's noise ordinance.[10]  For their part, citing *DeNucci v. Pezza*, 114 R.I. 123, 329 A.2d 807 (1974), plaintiffs contend that "[t]his Court has

---

relative to the preemption argument.  In his November 14, 2024 bench decision, the hearing justice ruled on the federal preemption argument as follows:

> "I'm not considering any of that in my decision.  I was only going to use that portion [of the closing argument] that directly argues to the elements of preliminary injunction and everything that applies to that."

[9]     29 C.F.R. § 1926.601(b)(4) reads in relevant part as follows:

> "(4) No employer shall use any motor vehicle equipment having an obstructed view to the rear unless:
>
> "(i) The vehicle has a reverse signal alarm audible above the surrounding noise level or:
>
> "(ii) The vehicle is backed up only when an observer signals that it is safe to do so."

[10]     The Noise Ordinance of the City of Warwick prohibits "[a]ny unnecessary noise or sounds which equal or exceed" 60 decibels between 8:00 a.m. and 10:00 p.m.

held that compliance with regulatory rules, such as a zoning ordinance, does not sanction unreasonable conduct of one landowner that invades the private rights of his neighbor." (Internal quotation marks omitted.) Accordingly, it is plaintiffs' view that "OSHA does not preempt the Superior Court's power to declare and enjoin a nuisance."

It is defendants' further contention that the hearing justice erred because he "made no mention of the Plaintiffs having chosen to buy a home in an industrial zone, on a busy highway, in the flight path of a high-volume airport." Citing *Weida v. Ferry*, 493 A.2d 824 (R.I. 1985), defendants argue that "a plaintiff's choice to move into an area where challenged activity is permitted – and where there will inevitably be noise from the highway and airport – are among factors to consider in determining the likelihood of success in a nuisance case." In response, plaintiffs argue that they "did not come to a nuisance, as their property is located in a residential historic district, and the [defendants'] activities at 175 Post Road did not exist at the time of [plaintiffs'] purchase." (Internal quotation marks omitted.)

This Court has emphasized that a party's likelihood of success on the merits of his or her claims is "the lynchpin" for granting a preliminary injunction. *See School Committee of the Town of North Kingstown v. Crouch*, 808 A.2d 1074, 1077 (R.I. 2002). We have repeatedly held that "a cause of action for a private nuisance arises from the unreasonable use of one's property that materially interferes with a

neighbor's physical comfort or the neighbor's use of his real estate." *Hydro-Manufacturing, Inc. v. Kayser-Roth Corp.*, 640 A.2d 950, 957 (R.I. 1994) (emphasis and internal quotation marks omitted); *see also Silva v. Laverty*, 203 A.3d 473, 481 (R.I. 2019).

It is our view that defendants' argument that "OSHA regulations preempt Warwick's [noise] ordinance," lacks merit. Significantly, the record is replete with evidence that the noise about which plaintiffs complained was by no means comprised solely of reverse signal alarms emanating from construction vehicles in the process of backing up. Rather, various witnesses testified to, and the hearing justice heard recordings of, other sources of noise, including hammering, banging, and other construction-related sounds. Therefore, we perceive no error in the fact that the hearing justice did not take judicial notice of the federal regulation at issue.

Even assuming, *arguendo*, that the reverse signaling of construction vehicles was the sole noise at issue, it is unlikely that defendants could prove federal preemption in the instant case. 29 C.F.R. § 1926.601(b)(4)(ii) provides for an alternative to an audible reverse signal alarm—specifically that "an observer" may signal that it is safe to back up the vehicle. Accordingly, compliance with both regulations at issue—i.e., the OSHA regulation and the City of Warwick's noise ordinance—is not a physical impossibility. *See Puerini v. LaPierre*, 208 A.3d 1157, 1163 (R.I. 2019) (stating that "[c]onflict preemption exists when compliance with

- 19 -

both federal and state regulations is a physical impossibility") (quoting *Verizon New England Inc. v. Rhode Island Public Utilities Commission*, 822 A.2d 187, 192 (R.I. 2003)).

The defendants also argue that the hearing justice erred in "fail[ing] to consider that the Plaintiffs had intentionally moved into an industrial zone on a busy highway in the flight of a busy international airport." We disagree with defendants' contention in this regard. In *Weida v. Ferry*, 493 A.2d 824 (R.I. 1985), this Court specifically stated: "We believe that one's coming to the nuisance is simply one factor that may be considered in determining whether or not a defendant's or a respondent's conduct was an unlawful interference with a neighbor's real estate." *Weida*, 493 A.2d at 827. It will be recalled that plaintiffs' property is located in a residential zoning district, and that plaintiffs purchased their home in 2021, whereas the instant noise issue did not arise until July of 2024 when plaintiffs began hearing persistent construction-related noises emanating from defendants' property. For these reasons, we view defendants' argument relative to the coming to the nuisance doctrine as unpersuasive.

We further note that, in ruling on the likelihood of success on the merits of plaintiffs' private nuisance action, the hearing justice stated:

> "[T]he [plaintiffs] have established a reasonable likelihood of success on the merits of a complaint for a private nuisance. The [plaintiffs] have established what is required, a prima facie case of private nuisance. The

totality of the evidence offered by the seven witnesses presented by [plaintiffs] credibly establishes that from July through October of 2024, there were frequent periods of long continuous and unreasonably loud noises, some exceeding personal limits set by the City ordinance generated by tenants on defendants' property. There are also occasions during this time period during which the Defendant Avagyan walked along the boundary line of [plaintiffs'] property holding a cell phone in a manner indicating that he was recording the [plaintiffs] on their property.

"The continuous loud and unnatural noise generated on the [defendants'] property and intrusive conduct related to watching and videotaping [plaintiffs] who are parents of a nine year old child can be construed as material interference with the ordinary physical comfort and reasonable use of [plaintiffs'] property."

In light of the record before us, it is clear that the hearing justice did not err in determining that plaintiffs had demonstrated a likelihood of success on the merits of their private nuisance action.

**B**

**Irreparable Harm**

The defendants contend that the hearing justice erred in finding irreparable harm. First, defendants argue that the hearing justice erred in "focus[ing] on adverse effects on the emotional health and well-being of both plaintiffs" because "there was no competent medical evidence offered * * * to satisfy the 'minimum requirement' for evidence of harm of a medical nature." (Internal citations omitted.) In response, plaintiffs aver that "[t]he hearing justice was also correct to find that the harm

- 21 -

suffered without injunctive relief was irreparable." It is plaintiffs' position that "[h]aving listened to the recordings, the hearing justice agreed with [plaintiffs'] description of the noise as 'maddening,' concurred that their statements that the noise rendered their time at home to be 'depressing,' and like living in 'hell' to be reasonable characterizations of the impact they were experiencing."

We have held that "[a] party seeking injunctive relief must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." *Finnimore & Fisher Inc.*, 291 A.3d at 986 (quoting *Nye v. Brousseau*, 992 A.2d 1002, 1010 (R.I. 2010)). We have further stated that "[i]rreparable injury must either be presently threatened or imminent * * *." *Id.* (quoting *Hebert v. City of Woonsocket by and through Baldelli-Hunt*, 213 A.3d 1065, 1077 (R.I. 2019)).

First, it is our opinion that defendants' assertion that plaintiffs' failure to produce medical evidence relative to their alleged injuries was fatal to their private nuisance claim is not well-founded. Specifically, defendants' reliance upon *Parrillo v. F.W. Woolworth Company*, 518 A.2d 354 (R.I. 1986), to support their assertion that plaintiffs needed to present "competent evidence of medical causation" to opine on the adverse effects of the noise at issue on their emotional health and well-being is unavailing. In *Parrillo*, the plaintiff sought damages pursuant to injuries sustained in a slip-and-fall accident. *Parrillo*, 518 A.2d at 354. The *Parrillo* court held that

certain medical evidence was inadmissible because it failed to establish a causal relationship between the defendant's act or omission and the plaintiff's injury. *See id.* at 355-56.

In the instant case, in contrast with the situation in *Parrillo*, plaintiffs did not seek relief in the form of damages as a result of defendants' negligence. *See Parrillo*, 518 A.2d at 355-56. Rather, the irreparable harm which plaintiffs alleged that they were being subjected to was the "loss of use and enjoyment of their property" caused by "[d]efendants' unreasonable use of their property." *See Weida*, 493 A.2d at 825. Accordingly, the hearing justice did not err in taking note of the effect of the noise at issue on plaintiffs' emotional health and well-being based on the undisputed evidence contained in the record. The brief lay testimony about physical symptoms experienced as a result of the noise issue was essentially of the *de minimis* variety, and we decline to hold that expert medical testimony was required in this case.

Additionally, the hearing justice, in referencing the testimony elicited at the preliminary injunction hearing, made specific findings as to how plaintiffs' emotional health and well-being was adversely affected by defendants' conduct. The hearing justice expressly stated:

> "The testimony of Ms. Carlton and [Mr.] McCauley clearly establishes that their emotional health and well-being have been adversely [a]ffected. They describe their feelings as 'maddening,' 'depressing,' and 'hell' in explaining their state of mind in dealing with their situation. In addition Mr. McCauley has a health

condition, tinnitus, which is exacerbated by prolonged periods of loud noise."

In ruling on the irreparable harm requirement, the hearing justice determined:

> "This [c]ourt is satisfied irreparable harm results without injunctive relief * * *.

> "The [plaintiffs] have provided credible evidence through their own observations and corroborated by other witnesses including police officers that activities on [defendants'] property at 175 Post Road created a material interference with [plaintiffs'] ordinary physical comfort, emotional well being and reasonable use of their property."

As a result, we see no abuse of discretion in the hearing justice's ruling that irreparable harm would result without the issuance of injunctive relief.

It is further defendants' position that the hearing justice "glossed over the availability of money damages" to compensate plaintiffs' "claimed injuries" and that, therefore, he "failed in execution of the irreparable harm step in this Court's required analysis for the grant of preliminary relief." For their part, citing *Dowdell v. Bloomquist*, 847 A.2d 827 (R.I. 2004), and *Harris v. Town of Lincoln*, 668 A.2d 321 (R.I. 1995), plaintiffs contend that "private nuisance has been recognized as a cause of action that merits both money damages and injunctive relief." We have stated that "a plaintiff in a nuisance action is not required to elect between injunctive relief and monetary damages." *Harris*, 668 A.2d at 328. And, we have further stated:

> "The rule of law is well settled that every person is bound to use his property so as not to injure that of another,

- 24 -

or interfere with the reasonable and proper enjoyment thereof; and that the carrying on of a business, which creates noisome smells, or noxious vapors, or causes great and disturbing noises, jarring, or vibrations, which affect injuriously property in the vicinity or render the occupation thereof inconvenient and uncomfortable, is a nuisance for which a person whose property is damaged, or whose health is injured, or whose reasonable enjoyment of his estate, as a place of residence, is impaired or destroyed thereby, may maintain an action to recover compensation for the injury, and that in such case a court of equity will restrain the continuance of the nuisance by injunction." *Blomen v. N. Barstow Co.*, 35 R.I. 198, 211, 85 A. 924, 928 (1913); *see DeNucci*, 114 R.I. at 128, 329 A.2d at 810.

In the instant case, the relief sought by plaintiffs is a return to the status quo as it existed prior to July of 2024 before the instant noise issue began. Money damages alone would not sufficiently provide plaintiffs with the use and quiet enjoyment of their land. *See Blomen*, 35 R.I. at 211, 85 A. at 928. Accordingly, we see no reason to disturb the hearing justice's determination that irreparable harm would result without the issuance of injunctive relief.

## C

### Balancing of the Equities

It is defendants' contention that the hearing justice "failed to undertake any balance of the equities among the parties." In addressing that issue, the hearing justice specifically found that the "balance of the equities favors the [plaintiffs] and serves the public interest." He explained his thinking in that regard as follows:

> "Defendant Avagyan has made it clear that he has no desire or interest to discuss this neighborhood dispute in any manner including during this hearing. * * *
>
> "[Abusive] conduct between neighbors that cannot be addressed because of one party's complete refusal to participate puts this [c]ourt in the position where it must act to preserve and protect the individuals [a]ffected by such conduct as well as the public's interest in having community residence, even those with different viewpoints being able to have their issues addressed in a civil manner.
>
> "Injunctive [r]elief is the only option available at this time to maintain peace, quiet, and controlled behavior, all of which serves the public interest."

Once again, we perceive no abuse of discretion in the hearing justice's ruling with respect to the balancing of the equities. The last sentence from the just-quoted portion of the decision reflects the laudably sensitive balancing conducted by the hearing justice in considering the extensive evidence before him.

## D

### Preservation of the Status Quo

Finally, with respect to whether a preliminary injunction would preserve the status quo, we are impressed by the hearing justice's clear statement that "considering Defendant[] Avagyan's complete refusal to address the noise issues going forward, injunctive relief is both the best and only option to ensure the status quo." It is our understanding that the "status quo" in this case would be the situation that existed before the noise issue arose. With that understanding in mind and

- 26 -

bearing in mind the hearing justice's statement concerning Mr. Avagyan's "complete refusal," it is our view that the hearing justice certainly did not abuse his discretion in ruling that the preliminary injunction would serve to preserve the status quo.

\* \* \* \* \* \*

Having reviewed the entire record, we perceive no basis for concluding that the hearing justice abused his discretion in addressing each of the above-discussed required criteria relative to the issuance of a preliminary injunction. *See Vasquez*, 57 A.3d at 318 (stating that this Court "will not find an abuse of discretion if the party requesting the preliminary injunction at least has made out a *prima facie* case"). In his bench decision, the hearing justice conducted a thorough review of the evidence presented during the three days of the preliminary injunction hearing. He summarized the testimony of each of the witnesses and made credibility findings on the record. He specifically found that plaintiffs provided "credible evidence through their own observations and corroborated by other witnesses including police officers that activities on [defendants'] property at 175 Post Road created a material interference with [plaintiffs'] ordinary physical comfort, emotional well being and reasonable use of their property." Given the hearing justice's cogent and thorough consideration of each aspect of the preliminary injunction analysis, we see no basis for finding an abuse of discretion in any of his several discretionary rulings. *See*

*Gianfrancesco v. A.R. Bilodeau, Inc.*, 112 A.3d 703, 711 (R.I. 2015); *see also United Parcel Service, Inc. v. Griffiths*, 297 A.3d 502, 503 (R.I. 2023) (mem.).

**E**

**Specificity**

The defendants also question on appeal the degree of specificity in the preliminary injunction order because, in their view, "the language of the order is insufficiently clear and therefore does not satisfy the specificity and reasonable detail requirements of Rule 65 [of the Superior Court Rules of Civil Procedure]." However, the defendants did not object on specificity grounds to the language contained in the November 22, 2024 order or in the December 11, 2024 amended order. Accordingly, this issue has been waived.[11] *See DeMarco v. Travelers Insurance Company*, 26 A.3d 585, 628 (R.I. 2011) ("This Court has repeatedly indicated that it adheres to what is commonly called the 'raise or waive' rule—*i.e.*, we do not consider issues on appeal which were not raised and properly presented during proceedings in the court below.").

---

[11] Assuming *arguendo* that the specificity argument were properly before us, we would not be persuaded by the defendants' contention in this regard. It is our view that the order is more than sufficiently clear and sufficiently specific to have given notice to defendants as to the prohibited conduct. *See Ventures Management Co., Inc. v. Geruso*, 434 A.2d 252, 255 (R.I. 1981).

# V

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior

Court.  The record may be returned to that tribunal.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Vanessa Carlton et al. v. Artak Avagyan et al. |
| **Case Number** | No. 2025-132-Appeal.<br>(KC 24-1004) |
| **Date Opinion Filed** | July 14, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Nicholas J. Hemond, Esq. |
| | For Defendants:<br><br>Thomas M. Dickinson, Esq. |